NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| S. A. HOLDING CO., L.L.C. ) | Civ. Action No. 07-0944 (FSH) |
| DELILAH'S DEN OF S.A., INC ) | Civ. Action No. 07-2295 (FSH) |
| 86 BROAD ST. CORP. ) | Civ. Action No. 07-2524 (FSH) |
| ) | |
| Debtors/ Appellants, ) | **OPINION** |
| ) | |
| v. ) | |
| ) | |
| CITY OF SOUTH AMBOY ) | July 26, 2007 |
| ) | |
| Appellee. ) | |

**HOCHBERG, District Judge**

This matter is before the Court on two separate appeals from the Bankruptcy Court, based on two separate orders in the same case. Debtors' first appeal, originally filed on January 23, 2007 as Civil Action No. 07-944 ("First Appeal"), but not briefed until March of 2007, is from a December 22, 2006 order issued by the Bankruptcy Court (the "Executory Contract Order"). Debtors' second appeal, originally filed on May 30, 2007 as Civil Action No. 07-2524 ("Second Appeal"), is from a May 2, 2007 order issued by the Bankruptcy Court (the "Closure Order"). This Court has considered the parties's written submissions pursuant to Fed. R. Civ. P. 78.

**I.      Factual and Procedural Background**

Delilah's Den of S.A., Inc. ("Delilah") is a New Jersey corporation that owns and operates an adult nightclub. 86 Broad Street Corporation ("86 Broad") is a New Jersey

corporation that owns a currently inactive liquor license in South Amboy, New Jersey, which had been used in connection with the adult club owned by Delilah. S.A. Holding, LLC ("Holding") is a company that owns the property (the "Property") on which the nightclub is located. Together, Delilah, 86 Broad, and Holding constitute the debtors ("Debtors") in this action.

The City of South Amboy (the "City") and the Debtors have been in litigation since 1995. In 1995, both the City of South Amboy (the "City") and Delilah and 86 Broad commenced a series of actions with regard to Delilah's right to operate the adult club. Since then, a series of events have ensued as follows:

> **July 30, 1998:** The parties reached a settlement (the "Settlement Agreement"), which allowed Delilah to continue to operate its club as a "go-go club" for a term of two years commencing July 15, 1998, after which the club would revert to its prior use.
>
> **July 15, 2000:** The parties entered into a period of re-negotiation. According to David Lonski ("Lonski"), a principal of Holding, Mayor Jack O'Leary ("O'Leary") suggested in a meeting between O'Leary and Lonski that if Delilah would abandon its right to the go-go bar, the City would adopt high density residential zoning for the Property. See Declaration of David Lonski, dated November 20, 2006 ("Declaration of Lonski I"), at ¶12.
>
> **September 6, 2001:** The parties amended the Settlement Agreement (the "Amended Settlement Agreement"), to include the following provisions:
> > (1) "in exchange for a 24-month extension of the current sexually oriented business use at the Premises," the club would be <u>permanently abandoned at the end of the 24-month period</u> (September 2003, or the "Consent Closure Date"); and
> > (2) following the two-year extension, the City would designate the Property as a "redevelopment area" and establish "a redevelopment plan." See Amendment, attached as Exhibit B to Debtors' August 19, 2005 Motion, at 1,2.
>
> The Amended Settlement Agreement makes no reference to any alleged oral statement attributed to O'Leary on July 15, 2000 about "high density" residential zoning.
>
> **March 19, 2003:** The City placed the Property in a redevelopment zone and approved a

redevelopment plan (the "Redevelopment Plan"); the redevelopment zone was not a "high density" residential zone. Debtors did not contest the redevelopment plan, nor did Debtors challenge the Property's placement in said zone.[1]

**September 2003:** According to the written terms of the Amended Settlement Agreement, Delilah was to have closed its business by the Consent Closure Date, which fell in September 2003. However, Delilah contended that the City breached the Amended Settlement Agreement by not placing the Property in a high density residential zone; for this reason, Delilah continued to operate its business beyond the 24-month period.

**November 18, 2003:** The City filed a motion in the Superior Court of New Jersey to enforce the Amended Settlement Agreement.

**December 1, 2003:** The City adopted the Redevelopment Plan. Debtors' continued failure to contest the redevelopment and approval of the Plan was viewed by the City as an acceptance of the Plan. See Lanza Certification, at ¶ 8.

**December 23, 2004:** The Superior Court entered judgment in favor of the City, ordering Delilah to close the business immediately. The Court also held that Delilah, along with 86 Broad and Holding, were barred from challenging the proposed redevelopment plan due to a lack of prior opposition.

**December 28, 2004:** Debtors filed a motion for leave to appeal with the Superior Court of New Jersey, Appellate Division ("Appellate Division").

**January 6, 2005:** The Appellate Division ruled that: (1) Debtors were barred from challenging the Redevelopment Plan due to a lack of prior opposition; (2) the case was to be remanded for an evidentiary hearing as to whether there was a material breach of the contract based on the placement of the Property in a redevelopment zone that was not a "high density" redevelopment zone.

---

[1]Debtors claim that in January of 2003 they sought to participate in the redevelopment proceedings. See Declaration of David Lonski, dated December 14, 2006 ("Declaration of Lonski II"), at ¶2. The City asserts that Debtors did not challenge or participate in the redesignation or redevelopment plan, despite receiving notice of the proceedings. See Certification of John R. Lanza, dated May 3, 2005 ("Lanza Certification") at ¶¶ 4, 5,10. Debtors do not claim that they contested the Property's designation in connection with the Redevelopment Plan.

**Early 2005:** The Superior Court of New Jersey scheduled an evidentiary hearing in the matter for **March 31, 2005**.

**March 30, 2005:** One day before the hearing was scheduled to occur, Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court of the District of New Jersey (the "Bankruptcy Court"), thereby preventing the evidentiary hearing from proceeding. Debtors continued to operate Delilah's Den, 18 months beyond the Consent Closing Date as set forth in the Amended Settlement Agreement.

**June 20, 2005:** The parties, now proceeding in Bankruptcy Court, agreed to an order pursuant to 105(b) of the Bankruptcy Code (the "Abstention Order"), whereby the Bankruptcy Court would abstain from hearing substantive issues about the contract dispute, and refrain from closing down Debtors' business pending to the outcome of the state court litigation. The Abstention Order also contains a clause allowing the Bankruptcy Court to modify or vacate order at any time, after notice and a hearing. See infra discussion of the Abstention Order, at Section III.B of this opinion.

**August 19, 2005:** Rather than proceeding with the state court litigation, Debtors – despite having agreed to the Abstention Order – filed a motion in Bankruptcy Court to reject the Settlement Agreement as an executory contract pursuant to § 365(a) of the Bankruptcy Code. This motion was designed to forestall action and/or preclude the very state court litigation that the Abstention Order contemplated. Moreover, this kept a final state court determination on the merits at bay, and Delilah's Den continued to operate.

**Fall of 2006:** The case was transferred to a new Bankruptcy Judge, the Honorable Michael B. Kaplan. Judge Kaplan held a status conference in the fall of 2006, after which additional briefing on the August 19, 2005 motion was scheduled.

**December 22, 2006:** The Bankruptcy Court entered an order (the "Executory Contract Order") in favor of the City, holding that the Amended Settlement Agreement was not an "executory contract" subject to rejection under § 365(a) of the Bankruptcy Code. As a result, Debtors' motion to reject the Amended Settlement Agreement was denied. However, Delilah's Den continued to operate; at this point, more than three years after the Consent Closure Date.

4

**January 23, 2006:** Debtors appealed the Executory Contract Order of the Bankruptcy Court to this Court (the "First Appeal").

**March 15, 2007:** The City filed a motion with the Bankruptcy Court seeking closure of Debtors' business, based on the holding of the Executory Contract Order.

**May 2, 2007:** The Bankruptcy Court granted the City's March 15, 2007 motion, and entered a second order directing Debtors to cease operations as of June 1, 2007 (the "Closure Order").

On May 16, 2007, Debtors appealed to this Court for a motion to stay the Closure Order pending a decision by this Court on the First Appeal; this Court granted a temporary stay of the Closure Order on May 30, 2007.[2] On the same day that the stay was granted, Debtors filed the Second Appeal, seeking reversal of the Closure Order. This opinion addresses both appeals.

## II.     Legal Standard

A district court must accept a bankruptcy court's factual findings unless clearly erroneous. See In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d. Cir. 1989); Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d. Cir. 2000). A factual finding is clearly erroneous if it is either "completely devoid of minimum evidentiary support displaying some hue of credibility or ... bears no rational relationship to the supportive evidentiary data." Krasnov v. Dinan, 465 F.2d 1298, 1302-03 (3d. Cir.1972).

Legal conclusions are subject to plenary review by the district court. See In re Sharon

---

[2]Debtors' Motion for a Stay Pending Appeal was filed separately from both the First and Second Appeals, as Docket No. 07-2295; the Court's opinion granting that motion was filed under 07-2295 as well. This Court observes that Debtors have filed each new motion as a separate action, and instructs Debtors in the future to use a single docket number for motions related to a given action.

5

Steel Corp., 871 F.2d 1217, 1222 (3d. Cir. 1989); J.P. Fyfe, Inc. v. Bradco Supply Corp., 891 F.2d 66, 69 (3d. Cir. 1989). In instances of mixed questions of law and fact, the district court must apply the appropriate standard to each component. In re Sharon Steel Corp., 871 F.2d at 1222. Additionally, the district court must give conclusive effect to exercises of discretion by the bankruptcy court, unless such an exercise constitutes an abuse of discretion. See In re Vertientes, Ltd., 845 F.2d 57, 59 (3d. Cir. 1988).

### III.   Analysis

#### A.   Debtors' First Appeal

The First Appeal, as noted above, seeks reversal of the Executory Contract Order, in which the Bankruptcy Court's denied Debtors' motion to declare the Amended Settlement Agreement an "executory contract" and to reject it. Whether a contract is executory is a legal question subject to de novo review by the district court. In re Midwest Portland Cement Co., 174 Fed. Appx. 34, 36 (3d Cir. 2006) (citing In re Sunterra Corp., 361 F.3d 257, 263 (4th Cir. 2004)).[3]

Pursuant to § 365(a) of the Bankruptcy Code, a trustee "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval. 11 U.S.C. § 365(a). Although § 365 of the Bankruptcy Code does not offer a definition of "executory contract," courts generally rely on the "Countryman definition," which has been referred to with approval in the legislative history of the Bankruptcy Code. Sharon Steel Corp. v. National Fuel

---

[3] As this is a de novo review, the Court will consider Debtors' proffered parol evidence in connection with its analysis of the First Appeal.

Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989); 3-365 Collier on Bankruptcy 15th Edition Rev. § 365.02 (2007).  According to the Countryman definition, an executory contract is one in which "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989) (quoting Countryman, Executory Contracts in Bankruptcy, Part 1, 57 Minn. L. Rev. 439, 460 (1973)) (emphasis added).  The parties' performance of the contract must be examined at the time that the bankruptcy petition was filed.  In re Columbia Gas System Inc., 50 F. 3d 233 (3d Cir. 1995).  Additionally, non-bankruptcy law should be utilized to determine whether a party's failure to perform constitutes a material breach.  Id. at 240 n. 10.

The central issue is whether the City's action in placing the Property in a redevelopment zone – but not a high density residential zone – constitutes a material breach of the Amended Settlement Agreement.

In order to determine whether a party's remaining obligations constitute a material breach, the Court must look to relevant state law.  See In re Columbia Gas System Inc., 50 F. 3d 233 (3d Cir. 1995) (quoting Mitchell v. Streets, 882 F.2d 233, 235 (7th Cir. 1989)).  According to New Jersey law, a breach is considered material if it goes to the "essence of the contract." Young Travelers Day Camps, Inc. v. Michael Felsen, 118 N.J. Super. 304 (Dist. Ct. 1972) (quoting Ross Systems v. Linden Dari-Delite, 35 N.J. 329 (1960)).  Courts have referred to the Restatement (Second) of Contracts § 241 (1981) in order to determine whether a breach goes to the "essence of the contract." Id.  As stated in  Neptune Research and Development, Inc. v. Teknics Industrial Systems, Inc.**,** the factors in § 241 provide "a way to further the

7

purpose of securing for each party his expectation." 235 N.J. Super. 522 at 533 (App. Div. 1989).

These factors include:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

It is clear from analysis of these five factors there has been no material breach by the City that would render the Amended Settlement Agreement executory.

Factor (a). Debtors have not been deprived of a benefit which they reasonably expected. The sole basis proffered by Debtors for their expectation of the benefit of "high density" zoning is extrinsic evidence of an alleged conversation in July 2000 in which a city official said that it might be possible to place the Property in a "high density" residential zone in exchange for closure of Debtors' business.[4] See Declaration of Lonski I, at ¶ 12. However, that alleged statement, if made, occurred during a period of negotiations that preceded by more than one year the writing and execution of the Amended Settlement Agreement. The Amended Settlement

---

[4] This parol factual evidence is considered as a proffer of such evidence by Debtors; full fact-finding on the merits of whether this proffer is credible and whether it entitles the Debtors to damages, is to be completed on remand to the extent proper under New Jersey Law.

Agreement was signed in September 2001 after extensive negotiation, during which both sides were represented by counsel. The words "high density redevelopment zone" are not embodied in the Amended Settlement Agreement, nor suggested by any language in that agreement. While Debtors may, following remand, introduce evidence of that conversation in support of their interpretation of the Amended Settlement Agreement, for purposes of this Court's analysis as to whether the Amended Settlement Agreement is an executory contract, this Court finds that there was not a "reasonable expectation" of that benefit within the meaning of Factor (a) of § 241 of the Restatement.

Factor (b). Debtors can be adequately compensated if it is determined that Debtors are entitled to damages. A simple real estate assessment could determine the difference, if any, in monetary value between the Property as currently zoned, and the value of the Property had the City placed it in a high density redevelopment zone, if the fact-finder later decides that the parol evidence so alters the express contractual language of the Amended Settlement Agreement.

Factor (c). There has been no forfeiture. Prior to the current dispute, Debtors had twice agreed to close their business. Indeed, the City is currently disadvantaged because it has been unable to get the terms of the Amended Settlement Agreement enforced, and it has had an operational Delilah's Den for nearly four years after the Consent Closure Date.

Factor (d). It is Debtors, and not the City, who have taken action that effectively forestalled reaching the merits of whether the City has failed to perform. Debtors were granted an evidentiary hearing in state court on the matter, which was scheduled for March 31, 2005; one day prior to that hearing, Debtors filed voluntary petitions in Bankruptcy Court that forestalled the state court hearing.

Factor (e). Finally, there is no evidence that the City has failed to act in good faith. The City placed the Property in a redevelopment zone, approved a redevelopment plan, and adopted the Redevelopment Plan. These actions were consistent with the City's obligations pursuant to the express terms of the Amended Settlement Agreement. Debtors did not protest or challenge the Redevelopment Plan in the period from March to December of 2003 when it was in the process of promulgation and enactment. As found by both the Superior Court and the Appellate Division, Debtors have consequently forfeited their opportunity to challenge the Redevelopment Plan. Thus, the Bankruptcy Court may well determine on remand that Debtors are not required to equitable relief redesignating the zoning applicable to the Property.

The City's obligations under the Amended Settlement Agreement are not "so far unperformed" so as to "constitute a material breach." Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989) (quoting Countryman, Executory Contracts in Bankruptcy, Part 1, 57 Minn. L. Rev. 439, 460 (1973)). Thus, the Amended Settlement Agreement is not an executory agreement. This Court has decided the legal question that the Amended Settlement Agreement is an enforceable contract, affirms the Bankruptcy Court's decision not to reject it, and denies Debtors' First Appeal. This Court remands to the Bankruptcy Court for a determination of the parties' respective rights and obligations under the contract, including a consideration of any parol evidence.[5]

### B.    Debtors' Second Appeal

On June 20, 2005, the Bankruptcy Court entered a preliminary section 105(a) injunction

---

[5]This should not be used as an opportunity to relitigate the prior decisions of the Superior Court and the Appellate division; to wit, that Debtors have a right to challenge the Redevelopment Plan as it applies to them.

order (the "Abstention Order").  In relevant part, the Abstention Order provides that "the Bankruptcy Court will abstain from hearing the Debtors' Causes of Action ... and those issues that were before the State Court ... prior to the Petition Date."  See Abstention Order, dated June 20, 2005, at ¶2.  The Abstention Order also provides that the City is preliminarily enjoined from "shutting down the Debtors' business pending entry of a final non-appealable order from the trial or appellate court(s)."  Id. at ¶6.  Finally, the Abstention Order states that "[n]otwithstanding the foregoing, nothing herein shall be deemed to prohibit the Defendants from moving before the Bankruptcy Court at any time, after notice and a hearing to the Debtors and all parties in interest, and for good cause shown, to modify, vacate, or dissolve the injunction issued pursuant to the Order."  Id. at ¶8.

Less than two months after the Bankruptcy Court entered the Abstention Order, on August 19, 2005, Debtors filed a motion in Bankruptcy Court to reject the Amended Settlement Agreement as an executory contract pursuant to § 365(a) of the Bankruptcy Code.  The Bankruptcy Court ruled on the motion in its Executory Contract Order dated December 22, 2006, rejecting Debtors' arguments and finding that the agreement was not executory.  The City subsequently moved, on March 15, 2007, to close the business based on Debtors' non-performance of the Amended Settlement Agreement, which called for closure of Delilah's Den in September of 2003.

At oral argument for the City's motion, the Bankruptcy Court ruled that the City's March 15, 2007 motion constituted a motion "for a modification of the injunction ... to have this Court compel the debtor to close its operations consistent with the settlement."  See Transcript of April 23, 2007 Bankruptcy Court Hearing, at 25.  The Bankruptcy Court found that (1) the City sought

11

such modification pursuant to Paragraph 8 of the Abstention Order, and that (2) when the Abstention Order had been entered originally, the Bankruptcy Court had "envisioned the ability to modify the order upon proper application." Id. The Bankruptcy Court further observed that it "regard[ed] the contract as not being executory, having been fully performed by the City, and, therefore, the debtor having substantial number of years long past its obligation to cease certain types of operations, that [it is] time" to close the business. Id. at 27.

The Bankruptcy Court's May 2, 2007 Closure Order thus granted the City's motion, modified the Abstention Order, and ordered the closing of Debtors' business. Debtors, in the Second Appeal, contend that the Closure Order contravened the Abstention Order.[6] See Appellants' Brief on Appeal from Order of May 2, 2007, dated June 15, 2007, at 36.

Whether the Bankruptcy Court "erred in exercising its authority to permissively abstain is a matter reviewed for abuse of discretion." In re BWC Gas, LLC, 354 B.R. 701, 705 (E.D.Pa. 2006); see also In re Hechinger Inv. Co. of Delaware, 298 F.3d 219, 224 (3d Cir. 2002). Here, the Bankruptcy Court properly exercised its discretion initially to abstain, while clearly retaining jurisdiction to modify its Abstention Order. See Abstention Order, dated June 20, 2005, at ¶¶ 7, 8. The Bankruptcy Court also properly exercised its discretion to modify the Abstention Order

---

[6]Debtors also argue in the Second Appeal that the Executory Contract Order constitutes an ultra vires act as it violates the Abstention Order by addressing a substantive issue reserved for consideration in state court. However, Debtors never previously raised this argument in the First Appeal, which is the appeal of the Executory Contract Order. Therefore, Debtors may not now appeal the Executory Contract Order on this ground. Debtors' sole reference to the Abstention Order in their brief in support of the First Appeal was an argument that the motion to void the Amended Settlement Agreement was not made in bad faith. This Court finds that argument unpersuasive. Debtors sought to keep Delilah's Den in operation by first seeking the Abstention Order, and then seeking to unwind the very contract that they had sought to preserve for state court resolution.

upon making the following findings: (1) that the litigation had gone on so long that the process of the litigation itself was effectively undermining the terms of the Amended Settlement Agreement by keeping Delilah's Den open four years beyond the Consent Closure Date; (2) that it was <u>Debtors</u> who, in a sense, had invited the Bankruptcy Court to disregard the Abstention Order by affirmatively seeking to have the Bankruptcy Court find that the Amended Settlement Agreement was an executory contract and thus effectively void it on the merits; and (3) that the "request to compel the debtor to cease certain types of operations is [] necessary [as] a next logical step as a result of [the Court's] finding" in the Executory Contract Order. <u>See</u> Transcript of April 23, 2007 Bankruptcy Court Hearing, at 25-26. The Bankruptcy Court did not modify the Abstention Order <u>sua sponte</u>; it did so upon motion seeking modification, in accordance with the procedures set forth in the Abstention Order. <u>See</u> Abstention Order, dated June 20, 2005, at ¶8. The Bankruptcy Court's May 2, 2007 Closure Order did not constitute an abuse of discretion, and Debtors' Second Appeal is denied.

**IV.    Conclusion**

For the reasons set forth in the opinion above, both the First and Second Appeals are denied, this Court's temporary stay (issued in Civil Action No. 07-2295) is vacated, and Delilah's Den shall be closed forthwith in compliance with the Bankruptcy Court's Closure Order. This Court remands to the Bankruptcy Court to determine: (1) whether it or the state court shall decide on the merits the actual terms of the Amended Settlement Agreement, and the related question of what weight, if any, to give to the proffered parol evidence; (2) whether the City has failed to fully perform its obligations pursuant to the Amended Settlement Agreement;

(3) what, if any, relief shall be awarded to Debtors; and (4) whether there should be any offsets to any damages award as a result of the continued operation of Delilah's Den for nearly 4 years beyond the Consent Closure Date.  An appropriate order will issue.

/s/ Faith S. Hochberg<br>
Hon. Faith S. Hochberg, U.S.D.J.